### In re: Henry G. CISNEROS.
### Division No. 95–1.

United States Court of Appeals,
District of Columbia Circuit.

Filed June 15, 2001.

Before SENTELLE, Presiding, and FAY and CUDAHY,* Senior Circuit Judges.

### *ORDER*

PER CURIAM

Pursuant to the Independent Counsel Reauthorization Act of 1994, 28 U.S.C. §§ 591–599 (1994), the court, on its own motion, concludes that termination of the Office of Independent Counsel in the above-captioned matter is not currently appropriate under the standard set forth in 28 U.S.C. § 596(b)(2).

CUDAHY, Senior Circuit Judge, concurring:

The question whether it would be appropriate for this judicial panel to terminate

* Senior Judge Cudahy has filed a separate con-

the Office of the Independent Counsel in this matter is for me difficult and perplexing. And this is a responsibility that should be of the most crucial importance.

Independent Counsel Barrett was appointed in May 1995 to investigate alleged false statements to the Federal Bureau of Investigation by then-Secretary of Housing and Urban Development Henry Cisneros. The original grant of jurisdiction to Mr. Barrett also covered investigation of the possible related offense of obstruction of justice and of other possible related crimes by any persons or entities arising out of the probe of Mr. Cisneros. There were two subsequent grants of jurisdiction purporting specifically to cover alleged related income tax matters and essentially reasserting the scope of the investigation originally authorized. The last of these jurisdictional grants is dated March 26, 1997.

On September 9, 1999, Mr. Cisneros pleaded guilty to a misdemeanor and paid a fine of $10,000.00. For all practical purposes, this seems to have completed the proceedings with respect to Mr. Cisneros. Presumably, any involvement of Mr. Cisneros himself in related offenses such as obstruction of justice would have been known at the time of the plea bargain. However, since then, Mr. Barrett has continued an apparently wide-ranging probe of government officials who might, in his view, have sought to shield Mr. Cisneros. Some press accounts suggest that these continuing inquiries have met with diminishing returns but describe Mr. Barrett as maintaining an active grand jury process, which in his view is making unspecified but "substantial" progress.

It has been six years since Mr. Barrett began his investigation. It has been four years since he received his last grant of

currence.

jurisdiction, which only marginally expanded the scope of his efforts. In a few months, it will be two years since the investigation reached a culmination as to its principal target, Mr. Cisneros, with whom all accounts have now been settled. Mr. Barrett's office has been supported since its inception with almost $15,000,000 of the taxpayers' money, and he is now drawing down more than $1,000,000 every six months. Whether a cost-benefit analysis at this point would support Mr. Barrett's efforts is a question to which I have no answer. In any event, such an inquiry by this panel is apparently precluded under the now-expired independent counsel statute.

There seems to be no doubt that Mr. Barrett's prosecutors are actively engaged before a grand jury. The strict terms of 28 U.S.C. § 596(b)(2) apparently allow termination only if "investigations" and the resulting "prosecutions" have been completed; the grand jury stands at the intersection of these two processes. This state of affairs may be enough to determine our course at the present juncture, for the law literally construed may be that Mr. Barrett can go on forever so long as he claims or shows active grand jury activity, no matter how unpromising. Who is to contradict his evaluation that what he is doing is full of promise?

The submission by Mr. Barrett justifying continuation of his probe is a virtual carbon copy of his submission last year in the same cause, except this year he expresses the "hope" to have a final report on Mr. Cisneros (but perhaps not others) by the end of the year. A great deal of time has elapsed and a lot of money spent in pursuing charges that on their face do not seem of overwhelming complexity. And the continuation of Mr. Barrett's efforts may indeed justify these lavish expenditures if there is any prospect of unearthing skullduggery by officials to help

Mr. Cisneros. But at this juncture under the terms of the statute, we apparently have little choice but to accept representations of productive activity at face value despite persuasive reasons for doubt.